AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

**FILED**

JUL 08 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) |

Case No.  **19MJ2843**

One iPhone Cellular Phone, White in Color,
IMEI #35301009465176

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ❏ contraband, fruits of crime, or other items illegally possessed;
- ❏ property designed for use, intended for use, or used in committing a crime;
- ❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Methamphetamine |

The application is based on these facts:

See attached Affidavit of Special Agent Rainier Mendoza, Homeland Security Investigations

- ☑ Continued on the attached sheet.
- ❏ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

S.A. Rainier Mendoza, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___7/8/19___

_____
*Judge's signature*

City and state:  San Diego, CA

Hon. William V. Gallo, United States Magistrate Judge
*Printed name and title*

AEG
x9735

# AFFIDAVIT IN SUPPORT OF WARRANT

I, Rainier Mendoza, being duly sworn, hereby state as follows:

## INTRODUCTION

1.      This affidavit supports an application for a warrant to search the following electronic device (**Target Device**): iPhone cellular phone, white in color, IMEI #35301009465176, as described in Attachment A (incorporated herein by reference), and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960.

2.      The Target Device was seized from Antonio Velasco-Esparza ("Velasco") incident to his arrest for violation of Title 21, United States Code, Sections 952 and 960, Importation of Methamphetamine, at the Otay Mesa, California Port of Entry on February 11, 2019. The Target Device is currently in the possession of U.S. Customs and Border Protection, 9777 Via De La Amistad, San Diego, California 92154.

3.      Based on the information below, there is probable cause to believe that a search of the Target Device will produce evidence of the aforementioned crimes, as described in Attachment B (incorporated herein by reference.)

4.      The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates, times and amounts are approximate.

//
//
//
//

1

**EXPERIENCE AND TRAINING**

5.      I am a Special Agent employed with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI").  I have been so employed since December 2016.  In my current position with HSI, my duties include investigating the trafficking of federally controlled substances. During my experience in law enforcement, I have had training in investigating the unlawful importation, possession, and distribution of controlled substances. My experience includes many arrests, searches, and interviews. I have also worked and consulted with many law enforcement officers experienced in narcotics smuggling investigations. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego International Ports of Entry.

6.      I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and to enforce provisions of the Federal Controlled Substance Act, pursuant to Title 21 of the United States Code.  I have participated in criminal investigations involving, among other things, the illegal smuggling of narcotics into the United States, and I have received formal training in the laws and regulations relating to such investigations including 21 USC §§ 952 and 960, Importation of a Controlled Substance.  My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics smugglers in the normal course of their illicit activities.

7.      From July 2008 until December 2016, I was a Border Patrol Agent employed by the United States Border Patrol, which is a component of Customs and Border Protection (CBP), under the Department of Homeland Security. As a Border Patrol Agent, I was assigned to the Campo Station, in Pine Valley, California, where I participated in investigations into suspected drug smuggling, questioned suspects and witnesses, and conducted vehicle searches related to suspected drug smuggling.

8.   Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a.   Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b.   Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c.   Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d.   Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e.   Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

    f.   Drug smugglers therefore generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators.

9.   Based on my training and experience, including consultations with other law enforcement personnel, I know that drug traffickers commonly use electronic devices such as cellular telephones to store names, telephone numbers, records, drug ledgers, and other information pertaining to drug trafficking activity. I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone.

Specifically, I know based upon my training, education, and experience investigating narcotics conspiracies that searches of cellular/mobile telephones yields evidence:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to import controlled substances from Mexico to the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling-controlled substances from Mexico to the United States;

    d.    tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as, but not limited to, stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject phone; or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

10.    Based upon my training and experience, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs and use cellular telephones, emails, and text messages to facilitate drug activity. I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, the use of multiple vehicles as conveyances for drugs and drug proceeds, and the installation of false/hidden compartments ("traps") in those vehicles to covertly transport drugs and drug proceeds.

11.    I also know from training and experience that drug traffickers periodically change or "drop" their telephones and/or telephone numbers in an attempt to avoid law enforcement interception of their conversations. Moreover, it is my experience that narcotics

distributors purposefully use multiple communication devices (for example, cellular telephones) to keep law enforcement from understanding the full scope of their own and/or their organization's illicit conduct, in the event that their communications are being intercepted. I also know that drug traffickers frequently use text messaging to communicate with other traffickers in an effort to thwart law enforcement interception of communications.

12.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as methamphetamine. Typically, couriers smuggling controlled substances across the border are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Narcotics smugglers and their organizations use cellular and digital telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular and digital telephones.

13.     Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

**FACTS SUPPORTING PROBABLE CAUSE**

14.     On February 11, 2019, at approximately 10:55 a.m., Velasco, a United States Citizen, applied for admission to the United States at the Otay Mesa, California Port of Entry. Velasco was the driver, registered owner, and sole occupant of a 2012 Jeep Cherokee bearing California license plate 8DLV206 (the "Vehicle").

1      15.  As the Vehicle passed through the pre-primary inspection area, a Human

2  Detection Narcotic Detector Dog alerted to the undercarriage of the Vehicle. Customs and

3  Border Protection Officer ("CBPO") Falero noticed what appeared to be tampering with

4  the gas tank straps and screws and the gas tank hit solid. As CBPO Falero was inspecting

5  the Vehicle, CBPO Franco asked Velasco if the vehicle belonged to him and if he was

6  responsible for all of its contents. Velasco responded that the Vehicle was his and that he

7  was responsible for all of its contents. The Vehicle was sent to secondary inspection.

8      16.  In the secondary inspection area, a Z-portal X-ray revealed anomalies in the

9  gas tank. Upon further inspection and removal of the gas tank, 26 packages were found in

10  the gas tank of the Vehicle. The 26 packages, weighing approximately 27.50 kilograms,

11  tested positive for properties of methamphetamine at the time of arrest, and subsequent lab

12  reports confirmed that the 26 packages contained 25.74 kilograms of methamphetamine

13  (actual). Velasco was placed under arrest.

14      17.  Officers seized the Target Device incident to Velasco's arrest.[1]

15      18.  At the time of arrest, Velasco was in possession of a California vehicle

16  registration card, with an issue date of January 30, 2019.

17      19.  On February 12, 2019, a complaint was filed charging Velasco with

18  Importation of Methamphetamine in violation of Title 21, United States Code, Sections

19  952 and 960. On March 12, 2019, Velasco waived Indictment and was charged by

20  Information with one count of violating Title 21, United States Code, Sections 952 and

21  960, in the Southern District of California in case number 19-cr-00838-GPC.

22  _____

23  [1]  On February 11, 2019, HSI agents manually reviewed the contents of the Target
Device pursuant to border search authority and took pictures of information contained on

24  Velasco's phone. However, HSI agents were unable to forensically download the Target

25  Device at the time. Nothing from the February 11, 2019 manual review is offered to support
probable cause in this application with the exception of obtaining the iPhone's IMEI

26  number from photos from the date of arrest in order to properly identify the phone here.

27      I also declare that nothing from the prior search of the Target Device informs my
decision to submit this affidavit to obtain a search warrant for the Target Device. I seek

28  this affidavit independent of any information that was seen or reviewed (or not seen) in
prior searches.

6

1       20.    As part of my investigation, I obtained the California Department of Motor

2 Vehicle's certified records for Velasco and the Vehicle. The Vehicle was transferred to

3 Velasco on or about January 25, 2019, and the California DMV issued a registration card

4 to Velasco on January 30, 2019.

5       21.    Based upon my experience and investigation in this case, I believe that Velasco,

6 as well as other persons, were involved in an ongoing conspiracy to import methamphetamine

7 or some other federally controlled substance into the United States. Based on my experience

8 investigating narcotics smugglers, I also believe that Velasco may have used the Target

9 Device to coordinate with co-conspirators regarding the importation of methamphetamine or

10 some other federally controlled substance into the United States.

11      22.    Accordingly, based upon my experience and training, consultation with other

12 law enforcement officers experienced in narcotics trafficking investigations, and all the

13 facts and opinions set forth in this affidavit, I believe that information relevant to the

14 narcotics trafficking activities of Velasco, such as telephone numbers, made and received

15 calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages,

16 pictures, audio files, videos, and other digital information are stored in the memory of the

17 Target Device.

18      23.    Drug trafficking conspiracies require intricate planning and coordination. This

19 often occurs days, weeks, or even months prior to the actual importation of the drugs into

20 the United States. Co-conspirators communicate with one another in efforts to ensure

21 success in transporting their valuable cargo to its destination within the United States.

22 Given this, I request permission to search the Target Device for items listed in Attachment

23 B beginning on December 11, 2018 up to and including February 11, 2019. That date range

24 is based on Velasco's California DMV records showing that the Vehicle was transferred to

25 him on or about January 25, 2019 and registered to Velasco on January 30, 2019. Based

26 on my training and experience, Velasco likely would have been in communication with co-

27 conspirators to plan and coordinate his smuggle attempt, including acquiring the Vehicle,

28 in the two months leading up to his arrest.

# METHODOLOGY

24.     It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "airplane mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25.     Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**CONCLUSION**

27.     Based on all of the facts and circumstances described above, there is probable cause to conclude that Velasco used the Target Device to facilitate violations of Title 21, United States Code, Sections 952 and 960.

28.     Because the Target Device was promptly seized during the investigation of Velasco trafficking activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by Velasco continues to exist on the Target Device.

29.     WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the item described in Attachment A and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Rainier Mendoza
HSI Special Agent

Subscribed and sworn to before me this _____ day of July, 2019.


_____
Hon. William V. Gallo
United States Magistrate Judge

9

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

        iPhone cellular phone
        White in color
        IMEI #35301009465176
        (**Target Device**);

The **Target Device** is currently in the possession of the U.S. Customs and Border Protection, 9777 Via De La Amistad, San Diego, California 92154

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 11, 2018 to February 11, 2019:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to import controlled substances from Mexico to the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling-controlled substances from Mexico to the United States;

    d.    tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as, but not limited to, stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject phone; or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.